# Richmond

CHARLES S. GROSSO v. COMMONWEALTH OF VIRGINIA.

February 24, 1941.

Record No. 2382.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

*Wayt B. Timberlake, Jr.,* and *George G. Rimer* (Indianapolis, Ind.), for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

*Duval & Duval, Amicus Curiae.*

EGGLESTON, J., delivered the opinion of the court.

Charles S. Grosso was found guilty by a jury and fined the sum of $200 on a warrant charging him with unlawfully practicing "chiropractic and medicine" in the city of Staunton, on December 11, 1939, "without having first obtained a license therefor as required by law."

Chapter 68, §§1608, *et seq.,* of Michie's Code of 1936 regulates the practice of medicine in all of its branches. It defines the practice of medicine, provides for the appointment of a Board of Medical Examiners, and empowers it to issue certificates to those who have the prescribed educational requirements and have passed an examination prepared and held by it.

Code, sec. 1612, as amended by Acts 1928, ch. 515, p. 1350, provides that, ''Every certificate to practice medicine, homeopathy, osteopathy, chiopractic and chiropody granted under the provisions of this chapter shall, before the licensee begins to practice thereunder, be presented by him to the clerk of the circuit court of the county or the corporation court of the city wherein such practice is to be carried on,'' for registration in the ''medical register'' kept in such clerk's office.

Code, sec. 1614, as amended by Acts 1928, ch. 515, p. 1351; Acts 1932, ch. 188, p. 368, provides that upon the trial of any person for practicing without complying with the act, ''the burden of proof shall be upon him to establish his right to practice.''

Code, sec. 1615, as amended by Acts 1918, ch. 417, p. 762; Acts 1920, ch. 173, p. 247; Acts 1928, ch. 515, p. 1353, prescribes the educational standards and other qualifications of persons who may be granted a certificate to practice.

Code, sec. 1622, as amended by Acts 1928, ch. 515, p. 1357, provides:

''Any person shall be regarded as practicing medicine within the meaning of this chapter (1) who opens an office for such purpose, or announces to the public in any way a readiness to practice medicine in any county or city of the State, or prescribe for, or give surgical assistance, diagnoses or treats, heals, cures, or relieves those suffering from injury or deformity or disease of mind or body, or advertises, or announces to the public in any manner a readiness or ability to heal, cure or relieve those who may be suffering from injury or deformity, or disease of mind or body for a compensation; (2) or who shall use in connection with his name the words of letters ''Dr.,'' ''Doctor,'' ''Professor,'' ''M. D.'' or ''Healer,'' or any other title, word, letter or designation intending to imply or designate him as a practitioner of medicine in any of its branches, or of being able to heal, cure, or relieve those who may be suffering

from injury or deformity or disease of mind or body. This section shall also apply to corporations."

Code, §1623, as amended by Acts 1928, ch. 515, p. 1358, prescribes the punishment for "practicing medicine, homeopathy, osteopathy, chiropractic or chiropody in this State" in violation of the statute.

The Commonwealth proved that the accused had never presented to the clerk of the Corporation Court of the city of Staunton a certificate issued by the Board of Medical Examiners showing the right to practice, and that, in fact, he had never received from the board such a certificate or license.

The manager of the Witz building, in Staunton, testified that the accused rented three rooms therein on March 1, 1939, and had continuously occupied them since that time and up to the date of the trial on February 12, 1940; that he had his name on the doors and windows and an "X-ray sign" on the door; that he had a stenographer employed in the office; and that people went in and out of the offices.

In March, 1939, the accused had his name listed in the Staunton telephone directory as follows: "Grosso, Charles S., Chiropractor, Witz Building."

It was also shown that the accused inserted in the Staunton papers, on December 11, 1939, the day on which the offense is alleged to have been committed, advertisements in which chiropractic was lauded as a cure for backaches, constipation, rash and other ills. "Spinal analysis and consultation" were advertised as "free." The advertisement gave the office hours, telephone number, and location of the offices of the accused in the Witz building in Staunton. It was accompanied by a picture of "Mrs. Anna Flowers" and her affidavit that she had been cured of various illnesses by chiropractic treatments.

A previous advertisement carried in the Staunton papers included a picture of the accused and a trunk of the human body, and contained this statement: "To the thousands upon thousands of sufferers who are now

living under a handicap produced by an abnormal heart action, chiropractic offers the only real and logical solution.''

One Whisman testified that he had visited the offices of the accused in Staunton in August, 1939; that the accused X-rayed him and gave him a treatment, for which he charged and was paid the sum of $16.50.

The accused did not testify. He offered only one witness, John H. Stoke, for twenty years a chiropractor at Roanoke, whose proposed testimony, which we will later discuss, was excluded.

There being no assignment of error challenging the sufficiency of the evidence to sustain the verdict, such sufficiency is conceded. Neither is the sufficiency of the warrant questioned.

The contentions of the accused are:

(1) Code, §1615, as amended, prescribing the educational requirements for those desiring to take the examination conducted by the Board of Medical Examiners for a certificate to "practice medicine, homeopathy, osteopathy, and chiropractic in this State," is unconstitutional in so far as it applies to an applicant for a certificate to practice chiropractic; and

(2) By reason of certain rulings of the trial court on the admissibility of the evidence, the granting and refusing of instructions, the accused has been denied a fair trial.

The pertinent portion of Code, §1615, as amended, is as follows:

''All *applications* for certificates to practice medicine, homeopathy, osteopathy, and chiropractic in this State after the passing of this act must successfully pass an examination before the board of medical examiners, established by this act. The said board shall admit to examination any candidate who pays a fee of twenty-five

dollars, and submits evidence verified by affidavits and satisfactory to the board, that he or she:

\* \* \* \* \*

"(d) Has studied medicine not less than four school years, including four satisfactory courses of at least eight months each in four different calendar years in a medical school registered as maintaining a standard, satisfactory to the State board of education. Such standard being based upon the grading of the American Medical Association, of the American Institution of Homeopathy, and of the American Osteopathic Association, respectively."

The accused contends that this section discriminates against a candidate for a license to practice chiropractic, and, therefore, violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, and the due process clause of the Constitution of Virginia (Constitution of Virginia, §11).

Here the argument is that the statute recognizes four branches of the healing art—medicine, osteopathy, homeopathy and chiropractic—and ostensibly provides for licensing the practitioners under each; that while one who desires to take the examination for a license to practice either medicine, osteopathy, or homeopathy must submit proof that he has studied for four years in a school conforming to the standards prescribed by his particular chosen branch of the profession, no like standard is prescribed for one desiring to practice chiropractic, and that consequently the latter must qualify himself by taking a course not in a school approved by his particular branch of the profession, but in one approved by one of the other branches.

But even if it be conceded, for the moment, that the statute is discriminatory, we agree with the Attorney General that the accused is in no position to raise the question. For if the statute had provided that an applicant desiring to take the examination for a license to

practice chiropractic must show that he has taken a course in a school graded according to the standards of that profession, there is no evidence whatsoever that the accused could have qualified under such a provision. There is no evidence that he was denied permission to take the examination because of the lack of recognition of a chiropractic school, or that he has pursued his studies in such a school, or in any other school, or that he has had the four-year medical course prescribed by the statute. Consequently, the accused has in no way been injured nor have his rights been in any way prejudiced by the terms of the statute of which he complains.

It is well settled that one challenging the constitutionality of a provision in a statute has the burden of showing that he himself has been injured thereby. It avails him nothing to point out that some other person might conceivably be discriminated against.

As this court said in *Carpel of Richmond, Inc.* v. *City of Richmond,* 162 Va. 833, 842, 175 S. E. 316, 319: "Before one can ask that a statute be declared unconstitutional, he must show that he has been injured. Until that has been done, it is, so far as he is concerned, but a moot question."

See also, *Morgan* v. *Commonwealth,* 168 Va. 731, 737, 191 S. E. 791, 793, 111 A. L. R. 62; *Fireman's Mutual Aid Ass'n* v. *Commonwealth,* 166 Va. 34, 43, 44, 184 S. E. 189, 193.

In *Premier-Pabst Sales Co.* v. *Grosscup,* 298 U. S. 226, 227, 56 S. Ct. 754, 755, 80 L. Ed. 1155, the court said: "One who would strike down a state statute as obnoxious to the Federal Constitution must show that the alleged unconstitutional feature injures him."

We turn next to the assignments of error which challenge the rulings of the trial court on the admissibility of evidence and on the granting and refusing of instructions.

During the testimony of Dr. Preston, secretary of the Board of Medical Examiners, over the objection of the

accused, the lower court permitted the introduction of a letter which the witness had directed to the accused at Lexington, Virginia, on June 13, 1936, which read as follows:

"The attention of our Board has been called to the fact that you are practicing Chiropractic in Virginia without having first qualified in accordance with the Statute.

"In order that there may be no misunderstanding in the matter, the purpose of this letter is to make it entirely clear to you that in the event such practice continues it will be necessary to proceed against you in accordance with the law."

Clearly the letter was inadmissible. It charged the accused with "practicing Chiropractic in Virginia" without a license at a time and place not material to the charge on which he was being tried. The fact that the accused may have practiced chiropractic in Lexington in 1936, and was warned by Dr. Preston against continuing to do so, was entirely immaterial to the charge that he was practicing without a license some three years later at Staunton.

The accused next assigns as error the refusal of the trial court to allow his counsel to ask the witness, Whisman, certain questions on cross examination. This witness testified that he was induced by the accused's advertisements in the local newspapers to call at his office, where he was treated, and for which he paid the accused the sum of $16.50. Counsel for the accused, by cross examination, undertook to show that this witness had gone to the accused at the direction of a local physician who was interested in the prosecution of the accused and in the securing of evidence against him, and that this physician had furnished the money which the witness paid to the accused. Upon objection of the Commonwealth's attorney the trial court refused to allow such cross examination.

In our opinion this was error. The purpose of this cross examination was to show that the witness, instead of going to the accused in the search of medical advice, as he stated, had been sent there for the purpose of obtaining evidence against him. Clearly this bore on the credibility and bias of the witness and should have been allowed.

It is next assigned as error that the court refused to permit John H. Stoke, a chiropractic of twenty years' experience, to define the practice of chiropractic and to state whether the acts of the accused, described by the witness, Whisman, constituted the practice of chiropractic.

This assignment of error is based upon the assertion that the statute does not define the practice of chiropractic, and hence it may be shown by expert testimony.

It is true that the statute does not define the practice of chiropractic as distinguished from the practice of medicine, homeopathy or osteopathy. But section 1622, as amended, *supra,* provides that certain acts therein mentioned ''shall be regarded as practicing medicine within the meaning of this chapter,''—that is, chapter 68 of the Code which regulates the practice of medicine in all of its branches, including that of chiropractic. The latter part of section 1622 forbids the use of certain titles, words, letters or designations intending to designate the user as, or to imply that he is, ''a practitioner of medicine in any of its branches,'' which is a further indication that the section is not intended to apply to the practice of medicine in a restricted sense as one of the branches of the healing art.

Therefore, one who is guilty of the acts specified in the section is punishable under the statute whether the acts constitute the practice of chiropractic or one of the other branches of the profession recognized in the chapter. Indeed, it is conceivable that the acts done

by an unlicensed practitioner might constitute the practice of two or more branches of the profession.

█ The question before the court below, therefore, was whether the accused was guilty of the acts specified in section 1622, and which are "regarded as practicing medicine" within the broad meaning of that term, regardless of how such acts should be classified. It was the province of the jury to determine what acts the accused had committed, and the province of the court to determine whether these constituted a violation of section 1622.

In this situation it was not necessary or relevant to show that the acts committed fell within the practice of one branch of medicine as distinguished from another, and hence the testimony of the witness, Stoke, was properly excluded.

The accused next complains of Instruction "B" given at the request of the Commonwealth. This instruction, in effect, told the jury that if they believed from the evidence, beyond a reasonable doubt, that the accused, without having first received from the Board of Medical Examiners a certificate to practice medicine, and without having first registered the certificate in the clerk's office of the Corporation Court of the city of Staunton, did, within twelve months next preceding the date of the issuance of the warrant, December 11, 1939:

"(a) Open an office in the city of Staunton for the purpose of healing, curing or relieving human diseases, disorders, displacements, injuries or ailments by means of a certain system known as chiropractic, for compensation;

"(b) Or advertised in a newspaper published in the city of Staunton a readiness at Staunton to heal, cure and relieve persons suffering from injury, deformity or disease of body or mind;

"(c) Or use in connection with his name the word "Chiropractor," intending by said designation to imply

his ability to heal, cure or relieve persons suffering from disease, injury or deformity of body or mind, for compensation;

"(d) Or heal, cure or relieve, or attempt to heal, cure or relieve persons suffering from injury or deformity or disease of body or mind by examining or adjusting the spinal vertebrae of such persons for compensation," they should find him guilty, etc.

The accused complains of paragraph "(a)" of the instruction on the ground that it permitted the jury to find him guilty merely "for opening an office for the practice of chiropractic," and that this is not within the intent of section 1622.

■ This contention is not sound. The section clearly enumerates in the disjunctive certain acts which "shall be regarded as practicing medicine." One of these is the opening of an office for the purpose of practicing medicine in any of its branches, including that of chiropractic. Therefore, if the evidence showed that the accused did open an office for the purpose of practicing chiropractic, this was clearly one of the acts prohibited by the section for which he was liable to be punished. Indeed, the paragraph complained of is more favorable to the accused than he was entitled, for it limits the purpose of his practice to the chiropractic branch, whereas, as we have seen, it was a violation of the section if he opened an office for the practice of medicine in any of its branches.

Complaint is made that there is no evidence to support paragraph "(d)" of the instruction. Since the case must be reversed, and the evidence at the next trial may be different, it is not necessary that we discuss this paragraph of the instruction.

The accused requested this instruction of the court:

"The court instructs the jury that the law presumes the defendant innocent of the offense charged in the warrant, which presumption of innocence goes with him throughout the entire trial and applies to every stage of

the case, and unless the jury believe from the evidence beyond a reasonable doubt that the defendant is guilty as charged in the warrant, then they should find him not guilty.''

This instruction was refused by the court on the ground that section 1614 provides that in the prosecution of a person for practicing without a license, ''the burden of proof shall be upon him to establish his right to practice.''

In our opinion, the court erred in refusing to grant the requested instruction. This is a criminal prosecution. ''It is a fundamental principle of criminal law that a person charged with the commission of crime is presumed to be innocent; and that presumption follows the accused through every stage of the prosecution.'' *Potts* v. *Commonwealth,* 113 Va. 732, 733, 73 S. E. 470, 471.

Based on this principle this court has repeatedly said that an accused is entitled to the instruction requested or one in similar language. See *Widgeon* v. *Commonwealth,* 142 Va. 658, 665, 128 S. E. 459; *Campbell* v. *Commonwealth,* 162 Va. 818, 828, 174 S. E. 856.

The provision in section 1614, placing upon the accused the burden of proving ''his right to practice,'' was not intended to change this fundamental principle.

The charge against the accused here is composed of two elements, (1) the doing of certain things specified in the statute, and (2) the doing of them without authority. When the evidence of the Commonwealth establishes that the accused has done the things specified, the statute casts upon him the burden or duty of bringing forward evidence to show that he has the right to do them. But this in no wise deprives the accused of the benefit of the presumption of innocence.

In our opinion, the errors which we have discussed cannot be brushed aside as being ''harmless'' or merely ''technical,'' as argued by the Attorney General. On the contrary, they are substantial and we cannot say

that the jury was not influenced by them. Certainly we cannot say that they did not affect the punishment fixed by the jury, which was more than the minimum prescribed by the statute (Code, §1623, as amended).

Because of the errors committed in the trial court the judgment complained of is reversed and the case is remanded for a new trial.

*Reversed and remanded.*