## ` 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

NATHANIEL WHALEY v. COMMONWEALTH OF VIRGINIA.

November 26, 1973.

Record Nos. 8277 and 8278.

Present, All the Justices.

*Benjamin B. Cummings, Jr.* (*Lavenstein & Andrews*, on brief), for plaintiff in error in Record Nos. 8277 and 8278.

*William A. Carter, III, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error in Record Nos. 8277 and 8278.

I'ANSON, J., delivered the opinion of the court.

Defendant, Nathaniel Whaley, was convicted by a jury of rape and statutory burglary and was sentenced to twenty years and five years, respectively, in the State penitentiary. We granted defendant a writ of error in each case.

Defendant contends that the trial court erred in (1) refusing to grant an instruction on the presumption of innocence; (2) admitting into evidence a pair of undershorts; and (3) granting an instruction on the range of punishment for statutory burglary.

The evidence shows that shortly after midnight on September 7, 1970, defendant entered, without breaking, the home of Edward Lee Bell, in the City of Petersburg. Defendant aroused Bell, who was sleeping downstairs, and brandishing a pistol, demanded money. When Bell told him that he did not have any money, he was ordered by defendant to lead him upstairs to determine if anyone else was in the house.

Bell led the defendant to a room where Arleather Hill, a sixteen-year-old girl, was sleeping. Miss Hill was awakened, and was ordered by defendant to go outside with him to a wooded area where he forced her at gunpoint to undress and have sexual intercourse with him.

In response to a call, several Petersburg police officers went to the Bell home and found Miss Hill near the home in some bushes. She had lacerations on her body and a knot on her forehead. They also found at the scene blood spots, scuff marks on the ground and a billfold containing defendant's Selective Service card.

After taking Miss Hill to the hospital for a medical examination which revealed fresh and dried blood in and around her vaginal area and on one of her upper thighs, the police went to defendant's home where they found him in bed. While defendant was getting dressed the officers noticed some red smears on his undershorts.

When defendant was taken to police headquarters and was advised of his rights, he was told to undress. While defendant was disrobing, the police again noticed red smears on the front of his undershorts. He told the police that the smears were caused by recent sexual relations with his girl friend, not with the prosecutrix.

Defendant, by counsel, contends that the trial court erred in refusing to grant, or in not amending, the instruction offered by him on the presumption of innocence, which read:

"The court instructs the jury that the defendant is presumed to be innocent until his guilt is established by the evidence beyond all reasonable doubt. It is not sufficient that his guilt is probable only, or even more probable than his innocence. Nor can the defendant be convicted upon mere suspicion. No amount of suspicion, however strong, will warrant his conviction. But in order to convict, the evidence of guilt must be so strong that there can be no theory from the evidence consistent with his innocence."

The requested instruction was approved in *Smith* v. *Commonwealth*, 136 Va. 677, 682, 116 S.E. 246, 248 (1923). But in *Carson* v. *Commonwealth*, 188 Va. 398, 411-12, 49 S.E.2d 704, 710 (1948), we said that, "This instruction is not skillfully drawn, and does not correctly state the principles of law which the attorney for the defendant had in mind when he drew the instruction." We further said, however, that the "last sentence in the instruction could have been easily amended" so as to make it unobjectionable, and it was error not to adequately instruct the jury on the presumption of innocence.

We have repeatedly held that the accused is entitled to an instruction on the presumption of innocence, and it is reversible error for the trial court to refuse such an instruction when requested. *Allen* v. *Commonwealth*, 211 Va. 805, 808-09, 180 S.E.2d 513, 516 (1971); *Grosso* v. *Commonwealth*, 177 Va. 830, 844, 13 S.E.2d 285, 290 (1941).

The Commonwealth argues that Instruction D-4, which told the jury that the burden was on the Commonwealth to prove the defendant guilty beyond a reasonable doubt, sufficiently covered the presumption of innocence principle. *Carson, supra*, 188 Va. at 412, 49 S.E.2d at 710, is relied on in support of the argument. *Carson* does not stand for the proposition that an instruction on reasonable doubt is a sufficient substitute for a presumption of innocence instruction.

As we said in *Campbell* v. *Commonwealth*, 162 Va. 818, 828, 174 S.E. 856, 861 (1934), the presumption of innocence is "a landmark of the law" and, as such, is not sufficiently met by a reasonable doubt instruction.[2]

We adhere to the rule that the trial court is not required to amend or correct an erroneous instruction, but the rule is subject to the limitation that when the principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial court to refuse a

---

2. *But cf. State* v. *Boswell*, 194 N.C. 260, 139 S.E. 374 (1927).

defective instruction instead of correcting it and giving it in the proper form. A jury should not be left in the dark on the subject. *Nelson* v. *Commonwealth*, 143 Va. 579, 589-91, 130 S.E. 389, 392 (1925); *Sims* v. *Commonwealth*, 134 Va. 736, 759-60, 115 S.E. 382, 390 (1922).

In the present case no other instruction was given on the presumption of innocence. It was materially vital to the defendant's case, and the failure of the court to amend the instruction and give it in proper form was reversible error.

Since these cases will have to be reversed and remanded, it is appropriate that we decide the other issues raised by the defendant.

■ Defendant says it was error for the court to admit into evidence the undershorts because no chain of possession was shown, no chemical analysis was made of the smears on the undershorts, no connection was shown between the undershorts and the rape, and thus no proper foundation was laid for their introduction.

*Robinson* v. *Commonwealth*, 212 Va. 136, 183 S.E.2d 179 (1971), relied upon by the defendant, is readily distinguishable from the present case. In *Robinson*, the trial court had admitted into evidence stained clothing and pubic hair, allegedly taken from a rape victim, and had also admitted the expert testimony of FBI agents concerning the results of their chemical and comparison analyses of the items. We found that the Commonwealth had failed to establish a vital link in the chain of possession of the items. We stated:

> "Without an unbroken chain of possession of the panties, blouse and pubic hair, they were not admissible as evidence *insofar as they supplied a basis for the opinion testimony of the FBI agents, who had examined them.* Thus, the opinions of the FBI agents were also not admissible." (Emphasis added.) 212 Va. at 138, 183 S.E.2d at 181.

We did not hold in *Robinson* that the Commonwealth is required in every case to establish an unbroken chain of possession before an item may be admitted into evidence. Rather, we held that where the results of a cemical or other technical analysis of an item are sought to be introduced into evidence, it must be shown with reasonable certainty that there has been no alteration or substitution of the item. And we said that in such a case the test of reasonable certainty is not met where there is missing a vital link in the chain of possession of the

item. But our opinion in *Robinson* clearly limits its application to the particular situation there involved. This limitation is demonstrated by the underscored language in the quotation set out above and by the further statement in the opinion that if the articles of clothing there in question, having been identified by the victim, had been admitted into evidence only to establish what she was wearing when she was attacked, there would have been no error in their admission.

In this case, no chemical or other technical analysis of the defendant's undershorts was sought to be introduced into evidence. So rules different from those enunciated in *Robinson* apply here.

In McCormick's Handbook of the Law of Evidence, Demonstrative Evidence, § 212, at 527 (2d ed. 1972), it is said:

> "If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition...."

A chemical analysis is not required in Virginia to determine whether an article contains blood. See *Barbour* v. *Commonwealth*, 80 Va. 287, 290-91 (1885). Inspection for bloodstains has been a traditional function of the jury. Marshall, Fitzhugh and Helvin, The Law of Evidence in Virginia and West Virginia, § 115, at 199-200 (Nash ed. 1954), citing *State* v. *Henry*, 51 W.Va. 283, 295-96, 41 S.E. 439, 444-45 (1902).

In the present case, the undershorts taken from the defendant were placed with the custodian charged with the duty of safely keeping such property. The police officer who obtained the undershorts from the defendant identified them, when presented as evidence, as the same ones he had received from the defendant, and they were in a substantially unchanged condition. The undershorts were admitted in evidence to show that they were worn by defendant at the time the rape was committed and to permit the jury to consider whether the red smears on the undershorts had any connection with the rape, since the evidence shows that the prosecutrix did bleed when the rape was committed.

Hence we hold that the proper foundation was laid for admission of the undershorts in evidence.

■ Defendant, by counsel, next contends that Instruction C-1 was erroneous because it did not correctly state the proper range of punishment.

The instruction told the jury that if they believed from the evidence beyond a reasonable doubt that the defendant entered the dwelling house of Bell with the intent either to commit *rape or larceny*, they should find him guilty of statutory burglary and fix his punishment at confinement in the penitentiary not less than one nor more than twenty years.

The pertinent part of Code § 18.1-88, as amended, provides for punishment of not less than one nor more than twenty years for a person who enters in the nighttime without breaking or in the daytime breaks and enters a dwelling house "with intent to commit murder, rape, or robbery." The pertinent part of Code § 18.1-89, as amended, provides that if any person does the acts as set forth in §18.1-88 "with intent to commit larceny, or any felony other than murder, rape or robbery," he shall be punished by confinement in the penitentiary not less than one nor more than twenty years, or, in the discretion of the court or jury trying the case, to confinement in jail not exceeding twelve months or a fine not exceeding $1,000, either or both.

The indictment in the present case charged the defendant with breaking and entering with the intent to commit larceny or a felony therein. It did not charge that the burglary was committed with the intent to commit murder, rape or robbery. Hence, the applicable punishment was that prescribed under Code § 18.1-89, and not under § 18.1-88. The court's instruction, however, permitted the punishment prescribed under § 18.1-88. Thus, the instruction was erroneous.

For the reasons stated, the judgments of the court below are reversed and the cases are remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*