COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Annunziata and Senior Judge Coleman
Argued at Alexandria, Virginia


IRVING WILLIAM VANCE

MEMORANDUM OPINION[*] BY
v.    Record No. 2450-00-4        JUDGE SAM W. COLEMAN III
                                   JANUARY 29, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
M. Langhorne Keith, Judge

Todd G. Petit (Office of the Public Defender,
on brief), for appellant.

Leah A. Darron, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Irving Vance was convicted of rape and abduction. On appeal,

Vance contends the trial court erred by (1) failing to strike

juror Hansen for cause; (2) admitting certain testimony of

Detective Colligan; and (3) admitting into evidence the victim's

jogging pants. Finding no reversible error, we affirm.

BACKGROUND

Vance was indicted for rape and abduction. At trial, the

victim testified that while she was jogging, Vance called to her

and made lewd comments. A short time later, Vance approached

her and asked for her telephone number. The victim ignored him

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

and continued running.  As the victim neared her residence,
Vance grabbed her and banged her face against a wall.  He tried
to cover the victim's mouth, but she was able to scream for
help.  Vance used a knife and gun to force the victim to a
secluded area behind a dumpster, where he raped her.

Vance testified that he approached the victim with the
intention of asking her for her telephone number.  He said he
placed his hand over her mouth because she initially screamed.
According to Vance, the victim stopped screaming after he
indicated his purpose for approaching her.  Vance claimed they
talked a while, after which the victim agreed to go with him
across the street to have consensual sexual intercourse.

REFUSAL TO STRIKE JUROR HANSEN FOR CAUSE

During voir dire, prospective juror Hansen indicated that
he works with a "sexual assault prevention team" at the
University of Virginia.  Members of the team work with sexual
assault victims on campus, and they give presentations on how to
work with sexual assault victims.  Appellant's attorney engaged
in a lengthy colloquy with Hansen during which Hansen agreed
that he would be sympathetic toward a person making an
accusation of rape, but that he could be impartial in
considering the evidence.

The trial court ruled that appellant failed to show that
Hansen could not "sit as an impartial juror."  The trial court
expressly noted "two instances" in which Hansen stated in

-

response to non-leading questions that he could be impartial and would not treat the victim's testimony any differently than any other witness.

An accused is constitutionally guaranteed the right to trial by "an impartial jury." U.S. Const. amends. VI, XIV; Va. Const. art. I, § 8; see Code § 8.01-358; Rule 3A:14. "Trial courts, as the guardians of this fundamental right, have the duty to procure an impartial jury." Griffin v. Commonwealth, 19 Va. App. 619, 621, 454 S.E.2d 363, 364 (1995).

"[W]e review a trial court's decision whether to strike a prospective juror for cause for an abuse of discretion and that ruling will not be disturbed on appeal unless it appears from the record that the trial court's action constitutes manifest error." Cressell v. Commonwealth, 32 Va. App. 744, 755, 531 S.E.2d 1, 6 (2000).

> "The standard to be applied by the trial court in determining whether to retain a venireman on the jury panel is whether his answers during voir dire examination indicate to the court something that would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."

Moten v. Commonwealth, 14 Va. App. 956, 958, 420 S.E.2d 250, 251 (1992) (quoting Eaton v. Commonwealth, 240 Va. 236, 246, 397 S.E.2d 385, 391 (1990)).

A review of the entire voir dire fails to show that the trial court erred in refusing to strike Hansen for cause.

-

Hansen twice stated he could be impartial and explained what he felt it means to be impartial. He further stated that he could apply the presumption of innocence and listen objectively to all of the evidence despite his training and experience. On this record, the trial court did not abuse its discretion by refusing to strike Hansen.

### DETECTIVE COLLIGAN'S TESTIMONY

The victim testified that she did not voluntarily accompany Vance behind the dumpster or consent to have sexual intercourse with him. She also testified that she screamed several times during the attack, but to no avail.

Thereafter, the Commonwealth's attorney called Detective Colligan as a witness. Colligan previously patrolled the neighborhood where the attack occurred. He had maintained weekly contact with the area and its residents after becoming a detective. The Commonwealth's attorney asked Colligan about the character of the neighborhood in which the incident occurred and the ethnic makeup of its residents. Appellant objected to the testimony on the grounds of relevance and undue prejudice.

The prosecutor argued that the evidence was relevant to explain why the victim's screams and calls for help may not have been heeded. The trial court ruled that the evidence "has some relevance" and "it's not so prejudicial that it's outweighed by the relevance."

Colligan then testified that "[i]t's a busy neighborhood as far as calls for service are concerned." He added that a large majority of the residents in the area are Hispanic.

"'Evidence is relevant if it tends to establish the proposition for which it is offered.'" Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987) (citation omitted). "'Upon finding that certain evidence is relevant, the trial court is then required to employ a balancing test to determine whether the prejudicial effect of the evidence sought to be admitted is greater than its probative value.'" Braxton v. Commonwealth, 26 Va. App. 176, 186, 493 S.E.2d 688, 692 (1997) (citations omitted). On appeal, a trial court's ruling that the probative value outweighs any incidental prejudice will be reversed only on a clear showing of an abuse of discretion. See Ferrell v. Commonwealth, 11 Va. App. 380, 390, 399 S.E.2d 614, 620 (1990).

Appellant was on trial for rape and abduction with intent to defile. To prove rape, the Commonwealth had to prove that appellant "engag[ed] in sexual intercourse with the victim, against her will, by force, threat, or intimidation." Clifton v. Commonwealth, 22 Va. App. 178, 184, 468 S.E.2d 155, 158 (1996) (emphasis added) (citing Code § 18.2-61(A)). Based on Vance's pretrial assertions that he and the victim engaged in consensual intercourse and Vance's extensive cross-examination challenging the victim's claims that she screamed in vain for

-

help, the Commonwealth undertook to explain through Colligan's testimony why no one understood the victim's screams for help or responded to her screams. The Commonwealth argued that, because numerous crimes are reported in the area, residents might be accustomed to hearing screams or be reluctant to respond to them. Additionally, the Commonwealth suggested that the predominantly Hispanic residents may not have understood the victim's calls for help.

Because the Commonwealth had the burden to prove that sexual intercourse was accomplished against the victim's will and because Vance maintained that the incident was consensual, Colligan's testimony was relevant to the issue of whether the sexual intercourse was consensual or accomplished against the victim's will by force. Colligan's testimony tended to provide an explanation why no one responded to the screams and thereby tended to rebut appellant's claim of consent. We are not persuaded by appellant's argument that the proof that the neighborhood had a high incidence of "calls for service" was irrelevant and prejudicial in that the jury might consider him guilty by association. The fact that the area experienced a large number of reported crimes was not prejudicial and did not tend to prove that Vance was guilty of rape merely because he was in the neighborhood, as Vance contends. Accordingly, the trial court did not abuse its discretion by admitting the evidence.

-

Appellant contends the trial court erred by admitting into evidence the victim's jogging pants.  He argues the Commonwealth failed to establish a "proper foundation and chain of custody" in that the Commonwealth failed to prove that the jogging pants were in the same condition as they were in following the alleged sexual assault.  Secondly, appellant asserts that the evidence failed to establish an unbroken chain of custody as to those persons who handled the jogging pants from the time that the victim relinquished them to the authorities until they were admitted at trial.  Specifically, appellant contends that the detective who introduced the pants at trial testified he received them from the sexual assault nurse at Fairfax Hospital, however, the nurse never testified as to how long she had the pants, or what she did with them, or how she came to possess them.  Thus, argues appellant, the jogging pants should not have been admitted into evidence.

At trial, the victim identified the jogging pants as those she wore the night she was abducted and raped.  She testified that she "came home . . . [and] changed from these gray pants to another pair of gray sweatpants" and explained they "were immediately taken by a police officer."  While the evidence does not establish whether the detective who received the jogging pants from the sexual assault nurse at the hospital was the same officer the victim said received the pants at her house, in

-

either event the evidence proves the detective received them on the evening of the assault from the victim or in her presence soon after the rape.

No forensic evidence was introduced concerning the jogging pants. Although no witness testified about grass stains on the jogging pants, apparently two small grass stains were on the pants. The Commonwealth's attorney made no comment about the grass stains and made no argument that grass stains on the jogging pants were evidence of a forcible rape rather than consensual sexual intercourse. No evidence established that the stain was relevant to this incident. Defense counsel, during closing argument, made the only comment about grass stains on the jogging pants, arguing that the presence of "only two small grass stains" was consistent with consensual sex where the pants evidenced no rips, tears or large stains as would be expected with a violent assault. In rebuttal to that argument, the Commonwealth's attorney's sole comment and argument concerning the jogging pants was related to an explanation about how the rape could have been accomplished by only partially removing the "very small" jogging pants.

"[T]he chain-of-custody standard announced in Robinson [v. Commonwealth, 212 Va. 136, 183 S.E.2d 179 (1971),] does not necessarily apply to a physical exhibit offered as demonstrative evidence as distinguished from an exhibit offered as a basis for a chemical analysis or the opinion testimony of an expert

-

witness." Jones v. Commonwealth, 228 Va. 427, 442, 323 S.E.2d 554, 562 (1984). In a strikingly similar case, the Supreme Court said in Whaley v. Commonwealth, 214 Va. 353, 357, 200 S.E.2d 556, 559 (1973), that when "the article of clothing . . . in question, having been identified by the victim, had been admitted in evidence only to establish what [the victim] was wearing when she was attacked, there would have been no error in their admission." In Whaley, also an appeal from a rape conviction, the trial court admitted into evidence a pair of undershorts taken from the defendant which contained red smears that appeared to be blood. There the Commonwealth did not seek to introduce a chemical or other technical analysis to prove that the smears on the defendant's undershorts were the victim's blood. The Commonwealth in Whaley did not have each person who had handled the undershorts testify to the chain of custody. Rather, the officer who received the shorts from the defendant merely identified them as having been received from the defendant. The Court held that the undershorts were sufficiently identified as those worn by the defendant at the time of the assault to be admitted into evidence. When the relevance of the evidence is solely to prove that the item of clothing is the same item worn by either the victim or the defendant at the time of the attack, and not for the foundation of introducing into evidence a chemical analysis, the

-

Commonwealth need only establish that the item of clothing is the same and that it is substantially in an unchanged condition.

Here, the victim identified the jogging pants as the ones she wore that night. Those pants were a physical exhibit offered as demonstrative evidence for that limited purpose rather than as the basis for scientific or expert evidence. Cf. Jones, 228 Va. at 442, 323 S.E.2d at 562. "The [pants] were admitted in evidence to show that they were worn . . . at the time the rape was committed." Whaley, 214 Va. at 357, 200 S.E.2d at 559. The Commonwealth's attorney did not argue that the grass stains or condition of the jogging pants proved a forcible rape. He only argued about the relationship of the pants to the underpants and the ease of removing the underpants. The implication from the victim's and detective's testimonies is that the jogging pants were in a "substantially unchanged condition when admitted at trial and when delivered to the detective.

On the other hand, defense counsel argued the small grass stains on the jogging pants without tears or significant additional stains tended to prove that the intercourse was consensual rather than forcible. Thus, appellant has failed to establish how he was prejudiced by the admission of this demonstrative evidence. See Clagett v. Commonwealth, 252 Va. 79, 91, 472 S.E.2d 263, 270 (1996) (requiring a showing of

-

prejudice for erroneously admitted evidence to be deemed not harmless).

For the foregoing reasons, the judgment of the trial court is affirmed.

<u>Affirmed.</u>