Richmond

## PETER DANIEL SMITH
### v.
## COMMONWEALTH OF VIRGINIA

November 22, 1978.

Record No. 780171.

Present: All the Justices.

George M. Rogers, III, for appellant.

Todd E. LePage, Assistant Attorney General (Marshall Coleman, Attorney General, on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

In this appeal by Peter Daniel Smith of his conviction of grand larceny, he alleges that the Commonwealth failed to establish an unbroken chain of possession of certain exhibits which supplied a basis for the opinion testimony of an expert witness.

On the afternoon of January 26, 1977, Mrs. Mary L. Brooks returned to her dwelling in Gloucester and found that the house had been ransacked. Numerous items of personal property and approximately $170 in cash were missing. The money that was stolen included ten $2 bills. Also missing were a $5 bill and five $1 bills which, together with an order for cosmetics, had been inserted into an envelope. The morning after the larceny Mrs. Brooks found the envelope and order on the floor, each torn into two pieces. The money that had previously been in the envelope was missing therefrom. Mrs. Brooks called Deputy Sherriff Dewey

W. Evans, telling him that she had found the envelope and that "whoever got the money, the money had to be torn, because of the way the envelope was torn". Evans then obtained the torn envelope and order from Mrs. Brooks.

Exie Robbins, an employee of a local Tastee-Freeze, testified that she had known the defendant all his life. She said that she was working on Wednesday, January 26, 1977, when the defendant came into the Tastee-Freeze shop several times, making five purchases of such items as barbeque sandwiches, ice cream and milk shakes. She said his first purchase was paid for with a $2 bill and a torn $1 bill, and that she asked her employer whether she should accept the bill. The defendant's second, third, fourth and fifth purchases were all paid for with $2 bills.

Edgar West, co-owner of the Tastee-Freeze, testified that the receipts of the shop for January 26, 1977, were collected in a cashbox, taken by him to his home, and placed in his wife's bedroom. Mrs. West verified that Exie Robbins had asked if it was all right to accept the torn dollar bill from defendant. Mrs. West said that the bill was placed in the cashbox and taken by her husband to her home, where it remained overnight. She said that it was customary to take a certain amount of cash to work in the morning and to leave the remainder at home. On the morning of January 27, 1977, while separating the contents of the cashbox, she said that she noted the torn $1 bill, laid it aside, and thereafter put it in her safe at home where it was to remain until she had a chance to go to the bank. Mrs. West further testified that later in the day she was approached by Deputy Sheriff Evans who asked about the money and requested to see it. She said that she obtained the bill from her safe at home and gave it to him. She said that no one, other than she and her husband, had access to the cashbox in which the bill had been deposited. Likewise she said that only she and Mr. West had access to their safe, and that no one, other than herself, had opened it.

Evans testified to receiving the torn envelope and order from Mrs. Brooks, and the torn dollar from Mrs. West. He initialed and dated both halves of the bill and the four parts of the envelope and order. He said that he then "hand carried" the items to the Newport News Police Department for fingerprint analysis. There-

after, on February 2, 1977, Evans personally delivered the items to Cleon C. Mauer at the State Laboratory in Richmond. Mauer, on the same day, dispatched the exhibits to the state's laboratory at Merrifield in Northern Virginia, where they were received by Durley B. Davis, Jr., the Questioned Document Examiner for the Virginia Bureau of Forensic Science and Criminal Laboratory System.

Davis testified that he received the torn envelope, order and bill via the normal procedure used by the state in transferring court exhibits between the central laboratory in Richmond and its Northern Virginia branch. He said that such transfers are made by enclosing the exhibits in a lockbox and then dispatching it in a van equipped with an alarm system and operated by an armed guard; that when the van containing the lockbox and exhibits therein arrives "the principal examiners, the document examiners and the paint examiners and chemists, open the lockbox together and obtain the evidence that's marked for them"; and that after the required examinations are made, the items or exhibits are returned by certified mail, under seal, to the jurisdiction in which the crime was committed.

In the instant case Davis said he was required to examine the torn documents "to see if they could have been torn apart all together in the same transaction, if the note (order) and the bill were in the envelope and torn at the same time as the envelope". He testified that the tear of the dollar bill matched about one and three-quarter inches of the note (order) which had been enclosed in the envelope. After making his examination, Davis said he placed the exhibits in a sealed envelope and returned them to Evans by certified mail. Evans acknowledged receipt of the exhibits and said the seal of the envelope had not been broken.

■ The defendant argues that the chain of possession of the exhibits was broken because no one testified to the possession of the exhibits between the time they were delivered to the central laboratory in Richmond, and the time they were received by Davis in Northern Virginia. Smith further says that it is not clear whether the torn dollar bill which was turned over to Evans by Mrs. West was the one received by Robbins from Smith. He relies on *Robinson v. Commonwealth*, 212 Va. 136, 138, 183 S.E. 2d 179, 180

(1971), and the rule therein enunciated "that the burden is upon the party offering the evidence to show with reasonable certainty that there has been no alteration or substitution of it". He argues that this burden is not carried if "some vital link in the chain of possession is not accounted for".

We are dealing here with items which, because of their character and composition, cannot be easily altered. In *Robinson* the challenged evidence consisted of stained clothing and pubic hair which involved chemical and technical analysis. In *Whaley* v. *Commonwealth*, 214 Va. 353, 200 S.E. 2d 556 (1973), we distinguished *Robinson* upon the ground that no chemical or technical analysis of the challenged evidence was involved. We said:

"We did not hold in *Robinson* that the Commonwealth is required in every case to establish an unbroken chain of possession before an item may be admitted into evidence. Rather, we held that where the results of a chemical or other technical analysis of an item are sought to be introduced into evidence, it must be shown with reasonable certainty that there has been no alteration or substitution of the item . . . .

\* \* \*

"In McCormick's Handbook of the Law of Evidence, Demonstrative Evidence, §212, at 527 (2d ed. 1972), it is said:

" 'If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition.. . .' "
214 Va. at 356-57, 200 S.E. 2d at 559.

In the instant case the offered items, the torn envelope, the torn order, and the torn dollar bill allegedly enclosed with the order, possessed characteristics which are fairly unique and readily identifiable. All the items were delivered to Officer Evans on the day following the commission of the crime and each was initialed and dated at that time. The items remained in the possession of Evans from that date until the date they were introduced into evidence, with the exception of the period between their delivery

to the laboratory in Richmond and their return to Evans from the Northern Virginia laboratory. The testimony shows the exhibits were handled regularly by the state laboratory officials. "There is a presumption of regularity in the handling of exhibits by public officials. . . . *United States* v. *Daughtry*, 502 F.2d 1019, 1021 (5th Cir. 1974)." *United States* v. *Coades*, 549 F.2d 1303, 1306 (9th Cir. 1977).

The torn dollar bill was received by the employee of the Tastee-Freeze shortly after the alleged crime occurred under circumstances which were not then regarded as suspicious. The bill was handled routinely by the employee and owners of the Tastee-Freeze. No one had any reason to alter or tamper with the torn bill from the time it was allegedly negotiated by the defendant until it was delivered the following day to Evans by Mrs. West.

While the burden is on the Commonwealth to prove the identity of the object upon which the testimony of its expert is based, the practicalities of proof do not require the Commonwealth to negate all or to exclude every possibility of substitution, alteration or tampering. It need only establish that it is reasonably certain that substitution, alteration or tampering did not occur. All that is necessary to establish a chain of custody of exhibits is that the evidence afford reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained. *See United States* v. *Coades, supra; United States* v. *Brown*, 482 F.2d 1226 (8th Cir. 1973); *State* v. *Davis*, 110 Ariz. 51, 514 P. 2d 1239 (1973); *State* v. *Williams*, 346 So. 2d 181 (La. 1977); *Nix* v.*State*, 276 So. 2d 652 (Miss. 1973); *State* v. *Burnett*, 538 S.W.2d 950 (Mo. App. 1976); *Eisentrager* v. *State*, 79 Nev. 38, 378 P.2d 526 (1963); *Contu* v. *State*, 533 P. 2d 1000 (Okl. Crim. 1975); 29 Am. Jur. 2d *Evidence* §774 (1967).

The evidence in the instant case meets the foregoing standard and establishes with reasonable certainty that there was no substitution, alteration or tampering with the exhibits introduced by the Commonwealth. They were properly admitted for consideration by the jury and as a basis for the testimony given by the witness Davis.

*Affirmed.*