## CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Michael Burden

April 9, 1987

By-JUDGE CHARLES R. WATERS, II

The issue in this case is whether expert testimony of fingerprint analysis should have been allowed in evidence at trial, the court having reserved its ruling on this evidentiary point. It is conceded by the Commonwealth that if the evidence should have been excluded, the case should be dismissed. If properly admitted then the mistrial will stand, the jury having failed to arrive at a verdict.

For reasons mentioned below, I have concluded that the admission of the evidence at trial was proper, and that the case should not be dismissed.

After the Mall Restaurant in this city had been burglarized, Officer Bradshaw lifted fingerprints from the back of the safe, attached the tape containing the impression of the prints to one side of a card and recorded certain other information on the other side of the card. She then placed the card inside of a small unsealed envelope and slipped the envelope into a small slot of a locked container. Only three officers, Melchor, Edwards, and Adams, had keys to this locked container.

Melchor removed the envelope from the container the next day by using his key, placing his initials and the date and time of the removal on the unsealed envelope. The envelope was then placed in an unsealed file in an unlocked filing cabinet located in a room at the first precinct. Undisputed testimony at trial revealed that

only Melchor, Edwards and Adams worked in that room and that they locked the door at night or whenever they left. The prints were analyzed and compared to other prints of the defendant, and several weeks later Bradshaw produced the unsealed envelope containing the card at trial, stating that Edwards had given it to her outside of the courtroom just prior to trial. Testimony was elicited at trial that if the tape containing the fingerprint impression had been tampered with, the print would have been obliterated or virtually destroyed. Moreover, Bradshaw testified, the card and tape which held the print appeared to be the same as it was when she first slipped the card through the slot into the locked container.

Although the prints may have been impervious to change, there is obviously the possibility that prints could have been substituted during the period of time that the prints remained on the tape on the card in an unsealed envelope in an unsealed file which, in turn, was located in an unlocked filing cabinet. There was no testimony to establish exactly who had possession during all times of this period, and no testimony of how Edwards got possession prior to handing the envelope to Bradshaw prior to trial, although Edwards was one of the officers who worked in the room where the filing cabinet was kept and one of those who had access to the file. Although there was no testimony on the point, there is also a possibility that janitors and/or maintenance personnel had access to the room where the filing cabinet was kept.

The prints had been subjected to a technical analysis by a fingerprint expert and compared to other prints of the defendant, and were offered in evidence for the sole purpose of having the expert opine that, based upon his analysis, the prints taken from the safe were the same as other prints taken from the defendant.

The prints were allowed, subject to the court receiving briefs at a later time, defense counsel having preserved his timely objection that the prints should not have been allowed on the ground that the Commonwealth had not established an unbroken chain of possession.

In determining this issue, it is appropriate to examine three cases: *Robinson v. Commonwealth*, 212 Va. 136 (1971); *Whaley v. Commonwealth*, 214 Va. 353 (1973); and *Smith v. Commonwealth*, 219 Va. 554 (1978).

106

In *Robinson* the trial court allowed into evidence stained clothing and pubic hair, allegedly taken from a rape victim, for the purpose of allowing FBI experts to render opinions based upon their chemical and comparison analysis of the items, even though the Commonwealth had not established an unbroken chain of possession. The Supreme Court reversed:

> Without an unbroken chain of possession of the panties, blouse and pubic hair, they were not admissible as evidence *insofar as they supplied a basis for the opinion testimony of the FBI agents who had examined them.* Thus, the opinions of the FBI agents were also not admissible. (My emphasis). 212 Va. at 138.

In *Whaley* the trial court allowed into evidence a pair of bloody shorts taken from an accused rapist, although an unbroken chain of evidence had not been established. This ruling was affirmed, although the case was reversed on other grounds:

> We did not hold in *Robinson* that the Commonwealth is required in every case to establish an unbroken chain of possession before an item may be admitted into evidence. Rather, we held that where the results of a chemical or other technical analysis of an item are sought to be introduced into evidence, it must be shown with reasonable certainty that there has been no alteration or substitution of the item. And we said that *in such a case the test of reasonable certainty is not met where there is missing a vital link in the chain of possession.* (My emphasis). 214 Va. at 356.

Under this seemingly clear and well reasoned, although somewhat rigid, distinction, the decision in the case at bar would seem to be obvious. The evidence is inadmissible! The prints were offered into evidence for the sole purpose of receiving expert opinion on the technical comparison analysis of the prints. The Commonwealth did not establish exactly who had possession of the prints

from the time that they were removed from the locked container until they were offered at trial, and there was some possibility, however slight, that the prints could have been substituted. It would seem that a vital link in the chain of possession had not been established.

But, alas! Things are not always as they seem.

In *Smith* the question was whether expert testimony should have been permitted that, based on a technical analysis of an envelope, order and dollar bill, all torn, the dollar bill had been inside the envelope with the order at the time the envelope was torn. The envelope and the order were torn at the time and place of the burglary and the dollar bill had been presented to a Tastee-Freeze by the defendant later the same day; therefore, as in the case at bar, the testimony was crucial. It was argued that a vital link in the chain of possession of the three items had not been established (the employees of Tastee-Freeze, for example, all had access to the torn bill for the remainder of the day after it was presented). The court affirmed the trial court which allowed the evidence:

> While the burden is on the Commonwealth to prove the identity of the object upon which the testimony of its expert is based, the practicalities of proof do not require the Commonwealth to negate all or to exclude every possibility of substitution, alteration or tampering. It need only establish that it is reasonably certain that substitution, alteration or tampering did not occur. *All that is necessary to establish a chain of custody of exhibits is that the evidence afford reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained.* (My emphasis). 219 Va. at 559.

In the case at bar, the question raised is the chain of possession from the time that Bradshaw placed the envelope in the locked container. One of the three fingerprint experts who had a key took it from the container. It remained in the room where the examination took place until trial, although in an unsealed envelope in an unsealed

file in an unlocked cabinet. The officers always locked the doors when they left. The card with the prints looked the same at trial as when Bradshaw placed it in the container and Melchor removed it from the container. There was no indication of tampering or substitution.

In my opinion, the evidence meets that standard set forth in *Smith* and establishes with reasonable certainty that there was no substitution, alteration or tampering with the exhibits introduced by the Commonwealth. As stated in *Smith*, there is a presumption of regularity in the handling of exhibits by public officials, and there is no reason why this presumption should not apply in this case.

I would like to state, however, that the better practice would be to have the envelope initially sealed before placing it in the container and to have the examiner place the card in a second sealed envelope after the conclusion of the analysis, saving both envelopes with the initials of the officer and the time and date of opening thereon. Furthermore, the filing cabinet should be locked. In this matter, the chain of possession can be more easily proven. The Commonwealth is forewarned that many factual circumstances can be envisioned wherein the court's ruling in this case would not be the same.

The case will not be dismissed and the mistrial will stand.