COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Lemons and Frank
Argued at Norfolk, Virginia


TERENCE L. HILL, S/K/A
 TERRENCE L. HILL
                                    MEMORANDUM OPINION[*] BY
v.   Record No. 2336-98-1           JUDGE DONALD W. LEMONS
                                        NOVEMBER 23, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                    Rodham T. Delk, Jr., Judge

            James L. Grandfield, Assistant Public
            Defender, for appellant.

            Leah A. Darron, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.

     Terrence L. Hill appeals his conviction of possession of a

firearm after having been convicted of a felony, a violation of

Code § 18.2-308.2.  On appeal, he argues that the trial court

erred in overruling his "chain of custody" objection to the

admission of a gunshot residue kit and that the evidence was

insufficient to prove that he possessed a firearm.  We disagree

and affirm the conviction.

                        I.  BACKGROUND

     On January 30, 1998, Officer J.L. Naylor, of the City of

Suffolk Police Department, responded to a call at the five

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

hundred block of Causey Avenue to investigate reported gunfire. Upon her arrival, Naylor observed Terrence L. Hill walking in an area posted with "No Trespassing" signs.  Naylor called for Hill to stop, but Hill began running.

Naylor chased Hill, and observed him stumble, fall, use his hands to break his fall, get up, and continue running.  Naylor apprehended Hill approximately one block from where Hill had fallen.  Naylor advised Hill that he was under arrest, and ordered him to place his hands behind his back.  Naylor told Hill that she would "cap stun" him if he continued struggling. Hill refused to comply, so Naylor stunned him, and subsequently handcuffed him.

Officer C.A. Fellers of the City of Suffolk Police Department arrived at the scene.  Fellers and Naylor walked to the location where Hill had fallen, and discovered a nine-millimeter Kel-Tek handgun.  The gun was discovered within two minutes of Hill's apprehension.

Thirty to forty minutes after Hill's arrest, a gunshot residue test was conducted on Hill's hands.  At Hill's trial, Naylor testified that she placed the sample obtained from Hill's hands inside an envelope, sealed it, and kept it in her custody and control at all times until she transported it to the Commonwealth of Virginia, Division of Forensic Science, Tidewater laboratory.

-

Douglas H. DeGaetano, an expert in the field of gunshot residue employed at the Division of Forensic Science central laboratory in Richmond, testified that he received and analyzed Hill's gunshot residue test kit, stating that he recognized it by its "unique forensic science case number" and his "initials where [he] sealed [the kit] after analyzing the samples." DeGaetano testified that his examination revealed a particle of gunshot residue on the sample taken from Hill's right hand, plus a particle which was "indicative" of primer residue on the sample taken from Hill's left hand. DeGaetano stated that primer residue can be deposited on a person's hands primarily in three ways: if the person fired the gun, if the person was present in the area when the gun was fired, or if the person handled a dirty weapon.

Hill objected to the admission of the gunshot residue kit (GSR) into evidence and to DeGaetano's testimony on the grounds that the Commonwealth failed to establish a sufficient chain of custody. Acknowledging that the GSR was delivered to the required lab in Norfolk by Naylor, Hill argues that the chain of custody is broken because there was no evidence concerning how the kit was transported from Norfolk to Richmond.

In addition, Hill testified that he did not have a firearm in his possession when Naylor chased him. He offered no explanation for the gunshot residue on his hands, and claimed that he had not been in close proximity to a weapon.

-

## II.  CHAIN OF CUSTODY

The GSR and DeGaetano's testimony were admitted into evidence over Hill's objection.  Inexplicably, the Commonwealth did not offer the certificate of analysis for the GSR into evidence.[1]  Hill argues that the failure to introduce the certificate removes any benefit of prima facie evidence of the establishment of chain of custody.[2]  While correct concerning the lack of any benefits conferred by Code § 19.2-187.01, the Commonwealth did not rely upon the certificate of analysis and its accompanying attestation.  Instead, the Commonwealth relied upon Naylor's and DeGaetano's testimony to establish the chain of custody.

"Establishing a chain of custody of exhibits is necessary to afford reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained."  Horsley v. Commonwealth, 2 Va. App. 335, 338, 343 S.E.2d 389, 390 (1986).  Although the burden of proving chain of custody rests with the Commonwealth, "[t]he Commonwealth is not required to exclude every conceivable possibility of

---

[1] The certificate of analysis for the GSR is in the record of the case having been lodged with the court as an exhibit to discovery responses by the Commonwealth.  It was not offered in evidence.

[2] The Commonwealth argues that Hill failed to present this objection to the trial court, and it is therefore barred on appeal.  Upon review of the record, we find that the objection was sufficiently stated to be preserved for review on appeal.

substitution, alteration, or tampering." Pope v. Commonwealth, 234 Va. 114, 121, 360 S.E.2d 352, 357 (1987). Rather, the Commonwealth is required to establish with "reasonable assurance" that the evidence presented and analyzed at trial was the same evidence, in the same condition, as when it was obtained by the police. However, "[w]here there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence." Reedy v. Commonwealth, 9 Va. App. 386, 391, 388 S.E.2d 650, 652 (1990).

Here, the evidence established that the GSR was taken from appellant by Officer J.L. Naylor at approximately 1:31 a.m. on January 30, 1998. Naylor placed the samples into an envelope, which she immediately sealed. Naylor kept the envelope in her possession until she delivered it to the Division of Forensic Science's Norfolk regional laboratory on January 30, 1998. Naylor assigned Case Number 9800585 to the GSR that she turned over to the Norfolk lab.

Douglas H. DeGaetano, a forensic scientist employed by the Division of Forensic Science at the central laboratory in Richmond, testified that he analyzed the GSR containing Case Number 9800585 and identified by Naylor as the GSR that she turned over to the Norfolk lab. The GSR contained the lab number T98-1015 and DeGaetano's initials where he sealed it

-

after analyzing the samples. Appellant presented no evidence tending to show that the GSR had been altered, substituted, or tampered with after it was delivered to the Norfolk lab. "There is a presumption of regularity in handling of exhibits by public officials." Smith v. Commonwealth, 219 Va. 554, 559, 248 S.E.2d 805, 808 (1978). In proving the chain of custody, the Commonwealth "'is not required to exclude every conceivable possibility of substitution, alteration or tampering.' Instead, the Commonwealth was required to establish with 'reasonable assurance' that the evidence analyzed and presented at trial was in the same condition as it was when obtained by police." Robertson v. Commonwealth, 12 Va. App. 854, 857, 406 S.E.2d 417, 419 (1991) (quoting Pope v. Commonwealth, 234 Va. 114, 129, 360 S.E.2d 352, 357 (1987)). Based upon this record, the trial court did not err in overruling appellant's objection to DeGaetano's testimony regarding the results of his analysis of the GSR.

### III. POSSESSION OF A FIREARM

Hill argues that the evidence was insufficient to support his conviction for possession of a firearm by a convicted felon, a violation of Code § 18.2-308.2. On appeal, Hill argues that the Commonwealth failed to prove either that he actually or constructively possessed a firearm. Hill also argues that the Commonwealth did not prove that the object introduced as Exhibit #2 was actually a firearm, "capable of expelling a

-

projectile by action of an explosion" as defined in Code § 18.2-308.2:2(G).

### A.  Actual or Constructive Possession

Because the police never saw him holding the handgun, Hill contends that the circumstantial evidence supporting his conviction was insufficient to support his conviction.  Hill argues that the Commonwealth's evidence "in its most favorable light" establishes only that Officer Fellers recovered the pistol "near where [Hill] had stumbled."

> On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  Moreover, [c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.

McBride v. Commonwealth, 22 Va. App. 730, 733, 473 S.E.2d 85, 87 (1996) (citations and internal quotations omitted).

"'Circumstantial evidence . . . is evidence of facts or circumstances not in issue from which facts or circumstances in issue may be inferred.'"  Byers v. Commonwealth, 23 Va. App. 146, 151, 474 S.E.2d 852, 854 (1996) (quoting 1 Charles E. Friend, The Law of Evidence in Virginia § 12-1 (4th ed. 1993)).  However, "[w]hen the Commonwealth relies solely upon [circumstantial evidence] it bears the burden of excluding every reasonable hypothesis of innocence, that is those which flow from the evidence itself, and not from the imagination of

-

defendant's counsel." Tyler v. Commonwealth, 254 Va. 162, 166, 487 S.E.2d 221, 223 (1997) (citations omitted).

To support a conviction for possession of a firearm after having been convicted of a felony, the Commonwealth must prove beyond a reasonable doubt that a defendant knowingly and intentionally possessed the firearm. See Blake v. Commonwealth, 15 Va. App. 706, 427 S.E.2d 219 (1993). Proof of the defendant's knowledge of the "presence and character" of a weapon is necessary to show that the defendant consciously possessed it, just as such proof is required to show possession of illegal drugs. See id. at 708, 427 S.E.2d at 220. Possession of illegal drugs "may be proved by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of narcotics at the place where they were found." Andrews v. Commonwealth, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975).

In the same way, possession of a firearm can be inferred by the surrounding circumstances. Here, Naylor responded to a call about reported gunfire. Upon her arrival, Naylor saw Hill and called to him, and Hill began running. Naylor chased Hill, observed him fall, use his arms to break his fall, get up, and continue running. After Hill had been apprehended, Fellers went to the area that Naylor identified as where he had fallen. Fellers recovered a handgun from that area. The gun was recovered within minutes of Hill's fall.

-

Although "mere proximity to contraband is insufficient to [prove] possession . . . [it is a] factor [which may] be considered . . . ." Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982).  Flight may also be considered as a factor in determining guilt.  See Langhorne v. Commonwealth, 13 Va. App. 97, 102, 409 S.E.2d 476, 480 (1991) (citation omitted).  An object which is "of significant value," such as a weapon, is unlikely to have been intentionally or carelessly discarded.  See Powell v. Commonwealth, 27 Va. App. 173, 178, 497 S.E.2d 899, 901 (1998).

DeGaetano testified that "primer residue [from a weapon] can be deposited on your hands by either firing a weapon, being in the close proximity to the discharge of a weapon or by handling a dirty weapon."  DeGaetano identified a "single particle of gunshot residue on [Hill's] right hand sample and . . . found a particle that was indicative of primer residue on [Hill's] left hand sample."  On cross-examination, DeGaetano testified that although there are other ways for primer residue to be deposited on hands, the three examples he gave are "the most typical ways."

Viewing the facts in the light most favorable to the Commonwealth, we hold that the evidence was sufficient to find that Hill had been in actual possession of the handgun recovered by Fellers from the area where he had fallen.

-

## B.  Rule 5A:18

On appeal, Hill argues that "the Commonwealth failed to establish that Commonwealth's Exhibit #2 was in fact a 'firearm,' capable of expelling a projectile by action of explosion."  Code § 18.2-308.2:2(G) defines a firearm as "any handgun, shotgun, or rifle which expels a projectile by action of an explosion."  Because Hill failed to raise this issue before the trial court, we are barred from considering it on appeal.  See Rule 5A:18.  See Dickerson v. Commonwealth, 29 Va. App. 252, 256, 511 S.E.2d 434, 436 (1999).

## IV.  CONCLUSION

We hold that the trial court did not err in overruling Hill's "chain of custody" objection to the admission of the GSR and DeGaetano's testimony concerning the test results and that the evidence was sufficient to prove that Hill actually possessed the handgun in question after having been convicted of a felony.

Affirmed.