COURT OF APPEALS OF VIRGINIA

Present:   Judges Bumgardner, Clements and McClanahan
Argued at Richmond, Virginia


OTIS LEE DINKINS

                                        MEMORANDUM OPINION[*] BY
v.       Record No. 3061-03-2              JUDGE RUDOLPH BUMGARDNER, III
                                              APRIL 19, 2005
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                          Margaret P. Spencer, Judge

            Gregory W. Franklin, Senior Appellate Defender (Office of the
            Public Defender, on briefs), for appellant.

            Virginia B. Theisen, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General, on brief), for appellee.


        Otis Lee Dinkins appeals his convictions of breaking and entering and grand larceny.  He

contends the trial court erred in admitting a certificate analyzing DNA specimens because of a

break in the chain of custody of the evidence examined.  We conclude the chain was missing a

vital link, and reverse.

        Officer Kenneth Wayne Cornett responded to a burglary at The Watch Pen & Pencil

Shop on East Main Street in Richmond.  He found the glass entrance doors shattered and display

cases broken.  He followed a trail of blood that led out to the street, through an alley, and into a

parking garage.  There the officer found a bloodied, broken display case similar to those in the

shop.  The officer removed a section of plexiglass from the case, wrapped it in paper, and locked

it in the trunk of his police car.  It stayed there until Officer Cornett took it to the police

department's property division.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The investigation led Officer Cornett to the defendant who was receiving treatment for cuts to his hand at the Medical College of Virginia Emergency Room. The defendant permitted the officer to take a discarded bandage that was soaked with his blood. Officer Cornett put the bloody bandage in a brown paper bag. He took that bag and the plexiglass to the police department and submitted them to the property division. He could not identify the property technician to whom he gave the items.

The next afternoon, Detective Gerald Brisette retrieved from the property division two paper bags "that were supposed to have contained blood evidence." He described the evidence he received as packaged in two paper bags, sealed with evidence tape, and labeled with bar codes. The bags contained a description of their contents and bore Officer Cornett's name. The detective took the evidence to the Division of Forensic Science for DNA testing.

The laboratory assigned the two sealed paper bags an identifying number, "FS Lab No. C02-15101," and turned them over to Stephen Rogers for testing. He testified at trial that one sealed paper bag contained the plexiglass that was wrapped in a white bio safety suit, which he explained was a disposable laboratory coat. The second sealed paper bag contained the bloody bandage.

Rogers tested the blood found on the plexiglass and in the bandage and concluded that the DNA in the blood matched. The certificate of analysis stated that if the blood on the bandage came from the defendant, his blood was also on the glass. The physical evidence was never offered.

The defendant argued the chain of custody was incomplete. The trial court summarized the facts as follows:

> Officer Cornett stated that at the scene he put [the plexiglass] in paper but then he wrapped it up and put it in a sealed paper bag and he put the evidence seal on the paper bag . . . . [A]s long as [Detective Brisette] testifies that he received a sealed paper bag,

> which had not been opened . . . the Court has to assume that Officer Cornett in fact put whatever wrapping was around [the plexiglass] . . . before he put it into the paper bag, because [Brisette] testified that he received a sealed paper bag.

The trial court overruled the defendant's objection and admitted the certificate.

Proof of a chain of custody is necessary to establish that the evidence recovered by the police is the same as that tested by the laboratory. Robertson v. Commonwealth, 12 Va. App. 854, 857, 406 S.E.2d 417, 419 (1991). The Commonwealth is not required to eliminate all possibility of tampering, Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971), but it must show "with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis . . . ." Washington v. Commonwealth, 228 Va. 535, 550, 323 S.E.2d 577, 587 (1984).

In Robinson, the trial court admitted an analysis of the panties, blouse, and pubic hair of a rape victim received from a property room officer. The investigating officer obtained the panties and pubic hair from the nurse who had collected them from the victim. He received the blouse from another officer. Neither the nurse nor the other officer testified. The Supreme Court reversed the convictions because of a break in the chain of custody. The treatment the exhibits received from the time they were taken from the victim until delivered to Officer Thompson constituted a vital link in the chain of custody. 212 Va. at 138, 183 S.E.2d at 181.

In this case, Officer Cornett never testified that he sealed the two paper bags with evidence tape, filled out the identifying labels, or signed his name to them. He simply stated that he wrapped the plexiglass in paper, placed the bandage in a paper bag, and submitted the two items to the property division. When Detective Brisette withdrew them from the property division, they were packaged in separate paper bags that were sealed, labeled, and identified with Officer Cornett's name. When the laboratory technician opened the sealed bag containing the plexiglass, he found it wrapped in a bio safety suit.

The property division technician did not testify, and nothing described the treatment the evidence received there from the time Officer Cornett delivered it until Detective Brisette retrieved it. The evidence showed that the plexiglass was wrapped differently than when Officer Cornett last described it. Nothing explains the presence of the disposable laboratory coat that enveloped it. The Commonwealth's evidence never explained how the evidence came to be in the condition in which the laboratory found it.

The trial court found that Officer Cornett collected the plexiglass, wrapped it in a paper bag, and sealed the bag before depositing it with the property division. Had the officer so testified, the evidence would have eliminated the possibility of tampering. However, the record does not support the finding of the trial court. The officer who first obtained the evidence never testified that he sealed the bloody plexiglass and bandage in a manner that would secure and preserve them for scientific testing. The officer did not testify as recollected by the trial court.

"[W]here the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis." Rodgers v. Commonwealth, 197 Va. 527, 531, 90 S.E.2d 257, 260 (1955). The evidence did not establish with reasonable certainty all vital links connecting the evidence as retrieved to the evidence as tested. Reasonable certainty is not obtained when a necessary link in the chain of possession is missing "'because then it is as likely as not that the evidence analyzed was not the evidence originally received.'" Robinson, 212 Va. at 138, 183 S.E.2d at 180 (citation omitted). Accordingly, we reverse the convictions.

Reversed and remanded.

McClanahan, J., dissenting.

The statistical probability that the DNA on the plexiglass belonged to someone other than Dinkins is one in six billion, or approximately the world population. However, Dinkins contends that the "unaccounted for change in the wrapping securing the purported piece of evidence indicates that the plexiglass may have been substituted or that the sample from it may have been altered or contaminated prior to its analysis."

Dinkins asks us to speculate about what may have possibly gone wrong in the property room – break in, substitution, tampering – without any evidence of such – and to conclude that equals a vital missing link in the chain of custody or the chain of possession. "The purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested." Robertson v. Commonwealth, 12 Va. App. 854, 857, 406 S.E.2d 417, 419 (1991). Cornett testified that he collected the plexiglass, wrapped it in paper, locked it in the trunk of his police vehicle, and later delivered the plexiglass to the police department's property room, which has the duty of safekeeping such property. Brisette testified that he went to the property room and retrieved the items that were listed in the police report as having been collected and that each piece of that evidence was sealed with evidence tape in paper bags with Cornett's name on it. Brisette then delivered the items to the state forensic laboratory, where Stephen Rogers conducted the DNA test on the items.

The chain of custody or possession here – Cornett to property room, property room to Brisette, Brisette to Rogers at the state forensic laboratory – provides reasonable assurance that the piece of plexiglass collected at the scene of the crime is the same piece of plexiglass that was tested.[1]

---

[1] The defendant incorrectly relies on Robinson v. Commonwealth, 212 Va. 136, 183 S.E.2d 179 (1971). In Robinson, a rape case, the physical evidence at issue included panties, an envelope containing pubic hair, and a blouse. An unidentified nurse delivered the panties and

- 5 -

Dinkins contends that because Cornett and Rogers described the packaging of the plexiglass differently, the plexiglass must have been contaminated. The law requires a chain of custody or chain of possession – not a chain of packaging. See Jones v. Commonwealth, 228 Va. 427, 441-42, 323 S.E.2d 554, 562 (1984); Smith v. Commonwealth, 219 Va. 554, 559, 248 S.E.2d 805, 808 (1978); Whaley v. Commonwealth, 214 Va. 353, 356-57, 200 S.E.2d 556, 559 (1973); Jeter v. Commonwealth, 44 Va. App. 733, 737, 607 S.E.2d 734, 735-36 (2005); Alvarez v. Commonwealth, 24 Va. App. 768, 776, 485 S.E.2d 646, 650 (1997); Crews v. Commonwealth, 18 Va. App. 115, 119, 442 S.E.2d 407, 409 (1994); Reedy v. Commonwealth, 9 Va. App. 386, 387, 388 S.E.2d 650, 650-51 (1990).

Although the evidence showed that the plexiglass may have had an additional wrapping, it did not show that anything irregular happened to it. The defendant did not offer any evidence that an additional wrapping of the plexiglass in the property room would somehow produce a false-positive DNA result. "'[P]roof of the chain of custody [requires] "a showing with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis, *in any way that would affect the results of the analysis*."'" Crews, 18 Va. App. at 119, 442 S.E.2d at 409 (quoting Reedy, 9 Va. App. at 387, 388 S.E.2d at 650-51 (quoting Washington v. Commonwealth, 228 Va. 535, 550, 323 S.E.2d 577, 587 (1984), cert. denied, 471 U.S. 1111 (1985))) (emphasis added). Without any evidence of tampering, it is a fair inference that the evidence was safely kept and properly handled in the property room. "In the absence of clear evidence to the contrary, courts may presume that public officers have properly discharged their

---

the envelope to the property room, while a police sergeant delivered the blouse to the property room. The Supreme Court found that the chain of custody was broken because neither the nurse nor the police sergeant testified. Id. at 137-38, 183 S.E.2d at 180. Thus, the evidence did not establish a chain of custody or possession between collection of the items from the crime scene and their delivery to the property room. There is no such problem in this case. The items remained in the possession of the police from the date of their collection until the date of their delivery to the lab.

official duties." Robertson, 12 Va. App. at 856-57, 406 S.E.2d at 418 (citing Smith, 219 Va. at 559, 248 S.E.2d at 808). "The Commonwealth is not required to exclude every conceivable possibility of substitution, alteration, or tampering." Pope v. Commonwealth, 234 Va. 114, 121, 360 S.E.2d 352, 357 (1987) (citation omitted). In addition, "'[w]here there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence.'" Brown v. Commonwealth, 21 Va. App. 552, 556, 466 S.E.2d 116, 117 (1996) (quoting Reedy, 9 Va. App. at 391, 388 S.E.2d at 652.). "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citation omitted).

Moreover, the defendant waived his objection to the introduction of the certificate of analysis because he made no objection to the oral testimony of the scientist who presented the same information contained in the certificate. Regarding evidentiary objections, the Supreme Court has held that "a well-taken exception to the admissibility of certain evidence [is] waived by the failure to object to the same evidence subsequently introduced." Philip Greenberg, Inc. v. Dunville, 166 Va. 398, 404, 185 S.E. 892, 894 (1936) (citing Portner v. Portner's Ex'rs, 133 Va. 251, 263, 112 S.E. 762, 766 (1922); Chesapeake & Ohio Ry. Co. v. Greaver, 110 Va. 350, 354, 66 S.E. 59, 60 (1909)); see also Charles E. Friend, The Law of Evidence in Virginia § 8-4, at 295 (6th ed. 2003) ("Waiver is found where: . . . [t]he objecting party fails to object to the same evidence when subsequently introduced by the opponent." (citation omitted)). During the testimony of Detective Brisette, the Commonwealth introduced into evidence, and the defendant objected to, the certificate of analysis that contained the lab results identifying the blood tested as Dinkins'. However, Stephen Rogers, the scientist who analyzed the crime scene items, subsequently testified as to those same lab results without objection. Thus, the defendant's

failure to object to the oral testimony of the scientist identifying the blood tested as Dinkins'

effected a waiver of his previous objection to the same evidence set forth in the certificate of

analysis.  I would, therefore, affirm the trial court.