UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Raphael, White and Senior Judge Petty
Argued at Richmond, Virginia


JESUS MANUEL LOPEZ-RAMIREZ

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0839-22-2                    JUDGE WILLIAM G. PETTY
                                                      AUGUST 1, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

(Cecilie B. Hamilton, on brief), for appellant.  Appellant submitting
on brief.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General; Maureen E. Mshar, Assistant Attorney General,
on brief), for appellee.


Jesus Lopez-Ramirez was convicted in the Chesterfield County Circuit Court on one count

of possession with intent to distribute a Schedule I or II narcotic, in violation of Code § 18.2-248,

possession of a firearm while in possession with intent to distribute a Schedule I or II narcotic, in

violation of Code § 18.2-308.4, and possession of a concealed weapon, in violation of Code

§ 18.2-308.  Lopez-Ramirez asserts on appeal (1) that the trial court erred in admitting the certificate

of analysis over his objection to the Commonwealth's failure to establish a chain of custody on the

contraband, (2) that the trial court erred in finding the evidence sufficient to support the convictions

for violating Code §§ 18.2-248 and 18.2-308.4, and (3) that the trial court erred in refusing to apply

the statutory exception to Code § 18.2-308.  For the following reasons, we affirm the trial court.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). Therefore, we will "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

Chesterfield County Police Lieutenant James Lamb was on patrol at around 2:00 a.m. on January 2, 2021, when he noticed the driver of a black Camaro, later identified as Lopez-Ramirez, make a u-turn and drive on the shoulder of the roadway. The Camaro stopped on the shoulder and then began traveling north. Lieutenant Lamb followed the Camaro and observed Lopez-Ramirez cross the double yellow line and "immediately correct." Lopez-Ramirez made a right-hand turn, again crossed the double yellow line, and turned "right on red without slowing down or stopping." Lieutenant Lamb activated his lights and siren to execute a traffic stop. Lopez-Ramirez initially slowed the vehicle, but then sped up and continued driving for one-and-a-half miles before Lieutenant Lamb drove up to the side of Lopez-Ramirez's vehicle, causing Lopez-Ramirez to bring the Camaro to a stop.

Lieutenant Lamb approached Lopez-Ramirez on the driver's side and noticed odors of alcohol and marijuana emanating from the vehicle. A male passenger was in the front seat, and two female passengers were in the back. Lieutenant Lamb asked Lopez-Ramirez for his identification and inquired about the odors. Lopez-Ramirez handed Lieutenant Lamb a Mexican passport and said that he had not consumed any alcohol. When Lieutenant Lamb instructed Lopez-Ramirez to step out of the vehicle, the male passenger exited the car and ran away. Lieutenant Lamb conducted

a pat down of Lopez-Ramirez and felt "a hard cylindrical object with a post sticking up a bit from the pocket." Lieutenant Lamb asked Lopez-Ramirez if the item would stick or poke him, and Lopez-Ramirez responded that he did not know. Lieutenant Lamb removed the item from Lopez-Ramirez's pocket and discovered that it was a cylinder to a revolver, loaded with two rounds of ammunition, and wrapped up in a plastic bag. Lieutenant Lamb asked where the rest of the gun was, and Lopez-Ramirez responded that it was under the driver's seat of the car.

Lieutenant Lamb recovered the rest of the firearm from underneath the seat and then searched the vehicle. In plain view directly behind the driver's seat, Lieutenant Lamb observed a glass jar containing a white powdery substance with an orange spoon in it. Lieutenant Lamb also found a digital scale with white powder residue in the driver's side door pocket. Directly in front of the shifter in plain view were one hundred "small baggies packaged in different packages, green, and one had an eight ball in it." Lieutenant Lamb was able to assemble the firearm within ten seconds. "It literally snapped together." Lieutenant Lamb also recovered a second firearm from the passenger seat of the car and a quantity of marijuana on the passenger side floor. Although a number of cell phones were recovered from the car, none of them were linked to Lopez-Ramirez, and Lieutenant Lamb did not recover any quantities of cash "or anything like that" from Lopez-Ramirez. Lopez-Ramirez was the registered owner of the vehicle.

Property and Evidence Unit Logistics Technician Amy Zahradka retrieved the evidence from a secured locker, which could not be accessed by police officers after submitting their evidence. Zahradka transported the evidence to the Department of Forensic Science for analysis. The state lab prepared a certificate of analysis listing the evidence submitted as "one digital scale with residue" and "one glass jar containing one ziplock bag containing compressed white powder and one orange plastic spoon." The certificate of analysis indicated that the digital scale contained

cocaine residue and the glass jar held "15.46 grams of powder . . . found to contain cocaine." The spoon was not analyzed.

At trial, Lopez-Ramirez objected to the admission of the certificate of analysis and argued that the chain of custody was not established. Thus, the trial court allowed the Commonwealth to recall Lamb and inquire further as to the chain of custody on the property retrieved from the car. Lamb explained that he collected the narcotics, the digital scale, and the firearms at the scene and gave them to Officer Eppes. A property storage report admitted into evidence indicated that Officer Eppes relinquished the property to the Chesterfield Police Property Division on the same day, January 2, 2021. The property storage report listed two handguns, a digital scale, three bags of packaging materials and batteries, a jar of powdery white substance, a bag of marijuana, and two types of cartridges. Lopez-Ramirez again argued that the chain of custody was not established and objected to the admission of the certificate of analysis. The trial court overruled the objection and admitted the certificate.

Detective Nathan Necolettos testified as an expert in the use and distribution of narcotics. Detective Necolettos opined that the amount of cocaine recovered from Lopez-Ramirez's vehicle, when coupled with the digital scale, the numerous baggies, and the firearms was inconsistent with personal use.

After the Commonwealth rested its case, Lopez-Ramirez made a motion to strike. Lopez-Ramirez argued that the evidence failed to prove he was aware of the nature and character of the drugs or that he exercised dominion and control over them. He also argued that the evidence failed to prove he possessed the scale or the baggies, and he asserted that the container exception to the concealed weapon statute applied, since the cylinder was "enclosed and inside a bag and then inside of his pocket." The trial court denied the motion to strike as to the concealed weapon charge and took the felonies under advisement.

Lopez-Ramirez elected not to present evidence and, instead, renewed his motion to strike, again asserting that the evidence failed to prove he possessed the contraband and arguing that the container exception to the concealed weapon statute applied. After closing arguments, the trial court denied the motion to strike and convicted Lopez-Ramirez of all three offenses. Lopez-Ramirez noted this appeal.

ANALYSIS

I. Chain of Custody

Lopez-Ramirez first assigns error to the trial court's admission of the certificate of analysis over his objection that the Commonwealth failed to establish the necessary links in the chain of custody. We disagree.

"The determination on a chain of custody challenge lies within the trial court's broad discretion and will not be overturned on appeal absent an abuse of that discretion." *Pope v. Commonwealth*, 60 Va. App. 486, 511 (2012). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Belcher v. Commonwealth*, 75 Va. App. 505, 523 (2022) (quoting *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022)). "The burden is on appellant to show that the trial court's admission of evidence constitutes reversible error." *Pope*, 60 Va. App. at 517 (quoting *Dunn v. Commonwealth*, 20 Va. App. 217, 220 (1995)).

"The purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested." *Jeter v. Commonwealth*, 44 Va. App. 733, 737 (2005) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 857 (1991)). "[W]here the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis." *Robertson*, 12 Va. App. at 857 (alteration in original) (quoting *Horsley v. Commonwealth*, 2 Va. App. 335, 338 (1986)). Thus,

"to satisfy the chain of custody requirement, the proponent of the evidence must show 'with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of the analysis.'" *Jeter*, 44 Va. App. at 737 (alteration in original) (quoting *Crews v. Commonwealth*, 18 Va. App. 115, 119 (1994)). The Commonwealth "is not required to exclude every conceivable possibility of substitution, alteration or tampering." *Alvarez v. Commonwealth*, 24 Va. App. 768, 776 (1997) (quoting *Robertson*, 12 Va. App. at 857). However, it must be able to "account for every '*vital* link in the chain of possession.'" *Id.* at 777 (emphasis added) (quoting *Robinson v. Commonwealth*, 212 Va. 136, 138 (1971)). Finally, we continue to recognize that "[t]here is a presumption of regularity in the handling of exhibits by public officials." *Smith v. Commonwealth*, 219 Va. 554, 559 (1978).

In this case, the Commonwealth's evidence provided reasonable assurances that the items collected from Lopez-Ramirez's vehicle were the same items sent to the Department of Forensic Science for testing. The evidence proved that on January 2, 2021, Lieutenant Lamb collected the evidence from Lopez-Ramirez's vehicle and handed it to Officer Eppes. Although Lieutenant Lamb did not observe Eppes package the evidence, the property storage report demonstrates that Eppes was the one who relinquished the items to the Chesterfield Police Property Division on the same day. The evidence was secured in a police locker and could only be accessed thereafter by officers assigned to the property division. On January 7, 2021, Zahradka retrieved those items from the secured police evidence locker and transported them to the Department of Forensic Science for analysis. When she reviewed the certificate of analysis during trial, Zahradka confirmed that the items listed on the certificate were the same items she delivered to the lab for testing. The certificate of analysis described the items as a "digital scale with residue," and a "glass jar containing one ziplock bag containing compressed white powder and one orange plastic spoon." The lab's description of the evidence is consistent with Lieutenant Lamb's description of the

evidence seized from Lopez-Ramirez's vehicle, including his report of a "jar of white powdery substance with an orange spoon in it," and shows that the evidence collected at the scene was the same evidence that was submitted to the lab.

Lopez-Ramirez nevertheless argues that the evidence failed to prove the chain because no testimony established "how the evidence was initially packaged, who actually packaged the evidence, or who transported the property to evidence." However, it is well settled that "[a] court need not hear . . . from every witness who physically handled the samples for the certificate to be admissible." *Anderson v. Commonwealth*, 48 Va. App. 704, 717 (2006), *aff'd*, 274 Va. 469 (2007). The Commonwealth "need only provide 'reasonable assurance' that the evidence obtained by the police was the same evidence tested." *Id.* (quoting *Vinson v. Commonwealth*, 258 Va. 459, 469 (1999)). Although Officer Eppes did not testify, the circumstantial evidence provided reasonable assurances that the items collected by Lieutenant Lamb were the same items transported to the Department of Forensic Science for analysis. There was no evidence that the items were tampered with before their analysis and no evidence to call into question the presumption that the evidence was properly handled. "[W]here there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight of the evidence." *Jeter*, 44 Va. App. at 739 (quoting *Reedy v. Commonwealth*, 9 Va. App. 386, 391 (1990)).

Accordingly, the Commonwealth established every vital link in the chain of possession, thereby demonstrating with reasonable certainty that the evidence was not altered, substituted, or contaminated. The trial court did not abuse its discretion in admitting the certificate of analysis.

## II. Sufficiency of the Evidence

Lopez-Ramirez challenges the sufficiency of the evidence supporting his conviction for possession with intent to distribute cocaine and, by extension, his conviction for possessing a firearm while possessing with intent to distribute cocaine.[1]  Again, we disagree.

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).  "This familiar standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)).  "[W]e will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'"  *Id.* (quoting *Kelly*, 41 Va. App. at 257).

> Generally, there are two types of evidence presented during a trial—direct evidence and circumstantial evidence.  Direct evidence is offered to prove as a fact the point in issue.  Circumstantial evidence, by contrast, is offered to prove a fact not directly in issue, from which a fact in issue may reasonably be inferred.

---

[1] Lopez-Ramirez does not argue that the evidence was insufficient to prove he possessed the firearm; nor does he argue that the evidence failed to prove the intent to distribute.  He argues only that the evidence failed to prove he knowingly possessed the narcotics and the paraphernalia found in his vehicle.

*Commonwealth v. Hudson*, 265 Va. 505, 512 (2003). "[I]n an appellate court's assessment of a sufficiency challenge, circumstantial evidence 'is as competent . . . as direct evidence' to prove the elements of a crime, 'provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Young v. Commonwealth*, 70 Va. App. 646, 653 (2019) (second alteration in original) (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)). The Commonwealth, however, "need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Simon*, 58 Va. App. at 206 (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). "The reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017) (quoting *Hudson*, 265 Va. at 513).

"In order to convict a person of illegal drug possession, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020). "[P]roof of actual possession is not required; proof of constructive possession will suffice." *Id.* (alteration in original) (quoting *Walton v. Commonwealth*, 255 Va. 422, 426 (1998)). "Constructive possession may be established when there are 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" *Id.* (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Pijor v. Commonwealth*, 294 Va. 502, 512-13 (2017) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Here, the totality of the circumstances supported the trial court's conclusion that Lopez-Ramirez was aware of the nature and character of the cocaine and that it was subject to his dominion and control. The evidence established that Lamb was on patrol at 2:00 a.m. when he observed Lopez-Ramirez driving erratically, as if impaired. When Lamb initiated a traffic stop, Lopez-Ramirez did not immediately stop and continued driving for one-and-a-half miles before submitting to Lamb's show of authority. "[E]vidence of flight may be considered as evidence of guilt along with other pertinent facts and circumstances." *Hope v. Commonwealth*, 10 Va. App. 381, 386 (1990) (en banc). During the traffic stop the front passenger suddenly exited the vehicle and ran away, and upon further investigation Lieutenant Lamb discovered that the Camaro, which was registered to Lopez-Ramirez, contained drugs and drug paraphernalia in plain view and within Lopez-Ramirez's reach. Indeed, to his immediate left in the pocket of the driver's door, was a digital scale with cocaine residue on it. To his right, "directly in front of the shifter," were one hundred small plastic baggies, and within his "wingspan" directly behind him and in plain view was a jar of cocaine with an orange spoon inside of it.

Further, Lieutenant Lamb discovered a firearm in the passenger seat, a partial firearm underneath the driver's seat, and the cylinder to the partial firearm in Lopez-Ramirez's pocket. It took Lieutenant Lamb only ten seconds to snap the cylinder to the partial firearm to make it operable. "Pagers and firearms are among the equipment that has been recognized as tools of the drug trade, the possession of which are probative of intent to distribute." *Askew v. Commonwealth*, 40 Va. App. 104, 108 (2003). Expert testimony at trial established that the digital scale and the amount of cocaine recovered from Lopez-Ramirez's vehicle were inconsistent with personal use and that the presence of the baggies and the orange spoon inside the jar of cocaine indicated "preparation for distribution."

The entirety of these facts, viewed in the light most favorable to the Commonwealth, would lead any reasonable fact finder irresistibly to the conclusion that Lopez-Ramirez consciously possessed the cocaine found in his vehicle with the intent to distribute it.

Lopez-Ramirez nevertheless argues that the evidence did not exclude every reasonable hypothesis of innocence because it did not "exclude the rear passengers as potential possessors of the drugs." However, "possession need not always be exclusive. The defendant may share it with one or more." *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 741 (1970)). Indeed, "[p]ossession need not be actual, exclusive, or lengthy in order to support a conviction; instead, the statute criminalizes constructive or joint possession of illegal drugs of any duration." *Wells v. Commonwealth*, 32 Va. App. 775, 781 (2000). Additionally, while neither occupancy of the vehicle nor mere proximity to the contraband give rise to a presumption of constructive possession, both are factors that "may be considered in deciding whether an accused possessed the drug[s]." *Yerling*, 71 Va. App. at 532. The fact finder "determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Moseley*, 293 Va. at 464. "Consequently, whether the evidence excludes all reasonable hypotheses of innocence is a 'question of facts,' and like any other factual finding, it is subject to revers[al] on appeal only if plainly wrong." *Young*, 70 Va. App. at 654 (alteration in original).

The trial court's rejection of Lopez-Ramirez's claim of innocence and the inferences it drew from the proven facts are not plainly wrong or without evidentiary support. The evidence proved that Lopez-Ramirez possessed the cocaine with intent to distribute and that he possessed the firearm while in possession of the drug with intent to distribute. Thus, we will not disturb the trial court's ruling on appeal.

## III. Concealed Weapon

Lastly, Lopez-Ramirez asserts that the trial court erred in refusing to apply the "carve out exception for concealed weapons secured within containers" referenced in Code § 18.2-308.

"Where the 'appellant argues that the trial court, under the facts adduced at trial, misapplied a statutory exception to the prohibition on carrying a concealed weapon[,] . . . the argument presents a mixed question of law and fact, which we review *de novo* on appeal.'" *Eley v. Commonwealth*, 70 Va. App. 158, 162 (2019) (alterations in original) (quoting *Hodges v. Commonwealth*, 64 Va. App. 687, 693 (2015)).

"If any person carries about his person, hidden from common observation, . . . any pistol, revolver, or other weapon designed or intended to propel a missile of any kind by action of an explosion of any combustible material . . . he is guilty of a Class 1 misdemeanor." Code § 18.2-308(A). However, an exception applies to "[a]ny person who may lawfully possess a firearm and is carrying a handgun while in a personal, private motor vehicle or vessel and such handgun is secured in a container or compartment in the vehicle or vessel." Code § 18.2-308(C)(8).

In *Myers v. Commonwealth*, 299 Va. 671, 682 (2021), the Virginia Supreme Court found that Myers was entitled to the statutory exception for carrying a concealed weapon under Code § 18.2-308(C)(8). In that case, Myers was in his vehicle with two other people when the police conducted a search and discovered a backpack containing a handgun. *Id.* at 675. Myers admitted that the handgun belonged to him. *Id.* The Supreme Court reasoned that because the handgun was found inside a zipped backpack, it was "secured" inside a container within his personal private vehicle, which met the requirements of Code § 18.2-308(C)(8). *Id.* at 682. The Supreme Court held that "[t]he ordinary meaning of 'secured' (when it is not considered an exact synonym of 'locked') includes a fully latched rigid container as well as a fully zipped soft container, such as one made of cloth, canvas, or leather." *Id.*

Here, unlike the scenario in *Myers*, the cylinder of the handgun was located on Lopez-Ramirez's person inside a plastic bag. There was no evidence that the cylinder was "secured" within the meaning adopted by the Supreme Court in *Myers*, because there was no evidence that the cylinder was "latched or otherwise fastened" inside the plastic bag. *Id.* at 681. The cylinder was merely "wrapped up in a plastic bag" and partially sticking out of Lopez-Ramirez's pocket. When Lamb asked if the item might poke or stick him, Lopez-Ramirez responded that he did not know. Moreover, there was no evidence that the remaining part of the gun, which was under the driver's seat and within arm's reach of Lopez-Ramirez, was secured in any way contemplated by the statute. It follows that, because the handgun was not entirely secured inside a container or compartment inside Lopez-Ramirez's vehicle, the statutory exception does not apply. Thus, the trial court did not err in finding Lopez-Ramirez guilty of carrying a concealed weapon.

## CONCLUSION

For the foregoing reasons, we find that the trial court did not abuse its discretion in admitting the certificate of analysis into evidence, that it did not err in finding the evidence sufficient to support the convictions, and that it did not err in refusing to apply the container exception to Code § 18.2-308. We affirm the judgment of the trial court.

*Affirmed*.